UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80300-CIV-HURLEY

**FRED LEVINSON and LOUISE LEVINSON,**
    **plaintiffs,**

vs.

**PREFERRED HOME MORTGAGE COMPANY,
LANDSAFE APPRAISAL SERVICES, INC. and
OCTAVIO MARTINEZ,**
    **defendants.**

_____/

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the court on motions for summary judgment filed by defendants Preferred Home Mortgage Company [ECF No. 46], LandSafe Appraisal Services, Inc. and Octavio Martinez [ECF No. 41]. Upon consideration of all relevant filings, the court has determined to grant the motions for reasons more particularly discussed below.

**I. FACT BACKGROUND**

In March, 2008, Plaintiffs Fred and Louise Levinson ("Levinsons") purchased a new home in the "Casa Bella" development in Delray Beach, Florida at a purchase price of $590,565.00 from property developer TOUSA Homes, Inc. d/b/a Engle Homes South Florida ("TOUSA"). The property was financed through a loan from Wells Fargo Bank which was brokered by Preferred Home Mortgage Company ("Preferred Home")(then a wholly owned subsidiary of TOUSA). Preferred Home retained Landsafe Appraisal Services, Inc. ("Landsafe") to conduct an appraisal

of the property for the lender,[1] and Landsafe assigned this task to associate Octavio Martinez. On February 15, 2008 Martinez issued his report assigning an estimated value of $591,000.00 to the home as of that date.[2] The report expressly designated Preferred Home Mortgage as the lender/client and the intended user of the report.

The property closed on March 10, 2008 with Universal Land Title acting as closing agent. Seven months later, in October 2008, Preferred Home sent a copy of the written appraisal report to the Levinsons. After then "learn[ing] more and more information about overvalued appraisals,"

---

[1] Wells Fargo, the lender, paid Preferred Home $1,421.97 for its services at closing.

[2] As stated in Martinez's affidavit, he valued the property by using pubic records on comparable sales. Under the express terms of the engagement letter issued by Preferred Home governing appraisals of new construction, he was required to select one comparable sale inside the Casa Bella development; one comparable sale from a competing builder/developer outside the development, and one new construction sale from either within or outside the Casa Bella development [Martinez Affidavit ECF No. 42, ¶ 28].

Martinez selected one home in Casa Bella as "Comparable No. 1," one home in the Mizner Country Club development as "Comparable No. 2," and one home in the Addison Reserve development as "Comparable No. 3." Martinez deemed the Mizner and Addison subdivisions, located within one mile of Casa Bella, to be similar based on market statistics (drawn from multiple listing service analyses) showing that Casa Bella had a median sale price of $860,000.00 from February 15, 2007 to February 15, 2008 with a median sale price per living square foot of $253.30 for properties ranging in living area sizes from 2100 to 3900 square feet.

In comparison, Mizner had a median sale price for homes ranging from 2100 to 3900 square feet of $840,000.00 and a median sale price per living square foot of $247.45, while Addison had a median sale price for properties ranging from 2100 to 3900 square feet of $750,000.00 and a median sale price per living square foot of $255.59 for this same time frame. Martinez did not make a location adjustment or amenities adjustment as he determined the properties in Mizner and Addison to be similar to those in Casa Bella, per market analyses report statistics, taking into account that the Casa Bella property purchased by plaintiffs was substantially upgraded and waterfront property [ECF No. 42, ¶¶40-42].

the Levinsons filed suit in state court on February 2012, asserting fraud in the inducement and federal RICO violations against Preferred Home, Landsafe, Octavio and Wells Fargo. After the case was removed to this court in March, 2012, the plaintiffs voluntarily dismissed Wells Fargo from the suit and dismissed the federal RICO claim as to all defendants except Preferred Home Mortgage Co. [ECF No. 22].[3]

## II. SUMMARY JUDGMENT ISSUES

In their current motions for summary judgment, defendants contend first, that all fraud-based claims fail as a matter of law because: (1) plaintiffs are unable to show the fact of a misrepresentation regarding the property's actual market value as of March, 2008; (2) plaintiffs cannot show reliance on the alleged misrepresentations regarding property value contained in the Martinez' appraisal report as an inducement to purchase, when, according to their own admissions, they did not receive a copy of the appraisal report until seven months after closing, and (3) plaintiffs cannot alternatively claim that they reasonably relied on representations of property value verbally relayed by defendants where both the loan application and purchase and sale agreement contained express disclaimers of reliance on representations of any kind made by seller or lender.[4]

---

[3]In their RICO claim, plaintiffs posit that Preferred Home and non-party TOUSA engaged in a conspiracy to fraudulently inflate the purchase price of homes in the Casa Bella development by controlling and manipulating Landsafe to supply inflated home appraisals.

[4]In the loan application submitted to Wells Fargo, plaintiffs acknowledged that "neither Lender nor its agents, brokers, insurers, servants, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property."

Similarly, in the Purchase & Sale Agreement, plaintiffs recited:

> Purchaser acknowledges and represents that purchaser has read this agreement and all exhibits and addenda to it, that purchaser agrees to be bound by all of its terms and that purchaser is not relying on any statement, promise, condition or stipulation not specifically set forth in this agreement.

[Purchase & Sale Agreement at p. 2] [Martinez Affidavit ECF No. 42, Ex. C].

As to the RICO claim lodged against defendant Preferred Home only, this defendant contends it is entitled to summary judgment as a matter of law because: (1) a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages," citing *Atkinson v Anadarko Bank & Trust Co.*, 808 F.2d 438 (5th Cir. 1987), and plaintiffs have alleged no facts to suggest that Preferred Home or TOUSA, its alleged co-conspirator, existed as entities apart from their respective businesses of providing mortgage brokerage services and real estate development; (2) plaintiffs do not show evidence of predicate acts of mail fraud or wire fraud, i.e. (a) misrepresentations regarding property value (b) transmitted by wire or mail (c) by Preferred with fraudulent intent to deceive plaintiffs, and (3) plaintiffs do not show evidence of repetitive acts or a "pattern" of racketeering activity based on mail/wire fraud.

On the element of reliance, plaintiffs concede that they did not receive the appraisal report until seven months after closing, but maintain that the contents of the report were verbally reported to them prior to closing and that they relied on those results in choosing to proceed with the closing. [For example, Mr. Levinson avers that Preferred Home "consistently and accurately (sic) represented to plaintiffs that the subject appraisal had issued valuing the home at $591,000.00," thereby misleading plaintiffs into closing on the property [Levinson Affidavit, ECF No. 64-1, ¶27].

As to the threshold misrepresentation issue, plaintiffs contend that evidence of the falsity of

---

In this same document, the Levinsons further acknowledged:

> Purchaser represents that Purchaser has not relied upon any statement, verbal or written, published by or under the authority of Seller in any advertising and promotional matter including, but not limited to, brochures, newspapers, radio or television, advertisements, but has based the decision to purchase on personal investigation, observation and the materials provided herewith.

[Purchase Agreement at p. 8] [Martinez Affidavit ECF No. 42, Ex. C].

4

the Martinez property valuation may be drawn from the testimony of Fred Levinson, who has submitted an affidavit averring that "[t]he appraisal procured by [Preferred Home] ... dated February 15, 2008 ... substantially overvalued the home to be purchased by plaintiffs." [ECF NO. 64-1, ¶16]. In addition, plaintiffs posit that circumstantial indicia of the falsity of the Martinez valuation may be found in factual discrepancies and errors rife in the comparable sales data relied upon by Martinez in formulating his report[5], arguing there is simply "no plausible explanation for the gross, material fictions in preparation of the subject appraisal, other than actual knowledge on the part of the defendants." [Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment, p. 7].

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970); *American Viking Contractors, Inc. v. Scribner Equipment Co.*, 745 F.2d 1365 (11th Cir. 1984). To prevail on a motion for summary judgment, the movant must show that the plaintiff has offered no evidence to support an essential element of his case, or present affirmative evidence that plaintiff will be unable to prove one or more essential elements of the case at trial. *Celotex Corp v Catrett,*

---

[5]As stated in the Levinson affidavit, Martinez and Landsafe misrepresented critical real estate data pertaining to the "comparable sale" homes used to justify his inflated valuation of plaintiff's Casa Bella home. For example, plaintiffs allege: (1) the "3 bedroom/2 bath" home with 2264 sq ft reported by Martinez as "Comparable No. 1" was actually a 5 bedroom/4 bath home with 2849 sq ft (thus explaining its higher sales price); (2) the properties used for Comparable Nos. 2 and 3 were inadequate and inappropriate because they were located in high end communities including golf courses, large clubhouses and other amenities absent at Casa Bella (thus explaining their higher sales prices).[ECF No. 64-1, ¶23]. Levinson further avers, "to the best of (his) information and belief," Martinez and Landsafe knowingly made these misrepresentations with the fraudulent intent of deceiving plaintiffs into purchasing a home priced far above fair market value. [ECF NO. 64-1, ¶29].

5

477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant successfully negates an essential element of the plaintiff's case, the burden shifts to the plaintiff to come forward with evidence demonstrating a genuine issue of material fact for trial. *Id.; American Viking* at 1369.

However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48; 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Id* at 248. A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the moving party has carried its initial burden under Rul 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 , 106 S. Ct. 1348, 89 L.Ed. 2d 538 (1986). Thus, "[a] mere scintilla of evidence in support of the non-moving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). Likewise, "'unsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion'" and "does not create a genuine issue of fact." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169 (11th Cir. 2005).

Rather, the party opposing summary judgment must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex Corp*, 477 U.S. at 333 n. 3 ("Once the moving party has attacked whatever record evidence – if any – the nonmoving party purports to rely upon, the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers; (2) produce additional evidence showing the evidence of a genuine

issue for trial as provided in Rule 56(c), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f). *Andersen*, 477 U.S. at 250.

In evaluating the evidence presented at the summary judgment phase, the court is mindful that "bare and self serving" allegations that are not based on personal knowledge are inadequate to survive summary judgment. *Stewart v. Booker T. Washington Insurance,* 232 F.3d 844, 851 (11th Cir. 2000). At the same time, the court is obligated to construe the facts and draw all inferences in the light most favorable to the nonmoving party, and, if conflicts arise between the facts developed by the parties, must credit the non-moving party's version. *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006). For example, where the nonmoving party presents an affidavit describing material, external facts based on first hand personal knowledge -- and not subjective belief -- the court is required to credit those statements and allow the jury to be the arbiter of any conflicts in the evidence. *Feliciano v. City of Miami Beach,* ____ F.3d ____, 2013 WL 425445 (11th Cir. February 5, 2013)(quoting *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)("Even if the district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices").

With these precepts in mind, the court turns to the issues presented on summary judgment in this case.

### III. DISCUSSION

#### A. Common Law Fraudulent Inducement Claims

To state a claim for fraudulent inducement under Florida law, a plaintiff must show: (1) the defendant made a false statement about a material fact; (2) defendant knew the statement was false when made or acted without knowledge of its truth or falsity; (3) the defendant intended for plaintiff to rely and act on the false statement; and (4) the plaintiff justifiably (reasonably) relied

7

on the false statement to his detriment. *Barrett v Scutieri*, 281 Fed. Appx 952 (11th Cir. 2008), citing *Simon v Celebration Co.*, 883 So.2d 826, 832 (Fla. 5th DCA 2004).

In this case, plaintiffs allege that Martinez and Landsafe knowingly assigned a false, inflated value to the Casa Bella property, acting together with and for the benefit of developer TOUSA, in furtherance of TOUSA's fraudulent scheme to jack up and sustain inflated sale prices for properties within the Casa Bella development. They allege that Preferred Home (then a wholly owned subsidiary of TOUSA) participated and furthered the scheme by: (1) falsely assuring plaintiffs that the property was worth more than the price plaintiffs agreed to pay; (2) falsely representing that the lender, Wells Fargo, would not make the loan unless the property value was consistent with the sales price; (3) repeatedly relaying that the property appraised for $591,000.00, knowing that this valuation had been fraudulently inflated by Landsafe and Martinez.

As a threshold challenge to the fraud-based claims, defendants contend that plaintiffs fail to adduce any evidence of the fact of a misrepresentation regarding the property value contained in the Martinez report. That is, defendants contend there is no competent evidence that the $591,000.00 valuation assigned to the property by Martinez as of February 15, 2008 was in fact inaccurate, i.e. they offer no evidence that the true property value *as of that date* was in fact substantially less than the $591,000.00 valuation assigned by Martinez.

Plaintiffs counter that they have satisfied their burden of creating a genuine issue of material fact on the "misrepresentation" element of the fraud-based claims through the affidavit of Fred Levinson, who, as the now current owner of the Casa Bella property, has opined that the Landsafe/Martinez appraisal "substantially overvalued" the Casa Bella home [ECF No. 64-1, ¶16].

Based on the presumption that an owner is familiar with his property and its value, an owner of property may give opinion testimony as to its value, although not qualified as an expert. *See e.g.*

8

*Hill v. Marion County*, 238 So.2d 163 (Fla. 1st DCA 1970). However, even though property owners are generally considered qualified to testify regarding the fair market value of their property, an owner's conclusory or speculative testimony will not support a judgment. *Sun Bank/North Florida, N.A. v. Edmunds*, 624 So.2d 753 (Fla. 1st DCA 1993)(owner must be shown to have knowledge regarding the value sufficient to qualify him). As noted by the Fifth Circuit, although "[i]n general, 'an owner is competent to give his opinion on the value of his property' ... such testimony cannot be based on naked conjecture or solely speculative factors." *King v Ames*, 179 F.3d 370, 376 (5th Cir. 1999) (Tex); *Kestenbaum v. Falstaff Brewing Corp*, 514 F.2d 690, 699 (5th Cir. 1975)(if owner's estimate is speculative, it may be of such "minimal probative force to warrant a judge's refusal even to submit the issue to the jury").

Similarly, the Tenth Circuit has recognized that "the owner's qualification to testify does not change the 'market value' concept and permit him to substitute a 'value to me' standard for the accepted rule, or to establish a value based entirely on speculation." *United States v Sowards*, 370 F.2d 87, 92 (10th Cir. 1966). Instead, "[t]here must be a basis for the landowner's valuation, and when the landowner's own testimony shows that his valuation has no probative value, the district court may determine that the landowner's testimony alone is insufficient to support a jury verdict." *Id.* Thus, as with expert testimony, a landowner must prove the factual basis on which his opinion rests. *See e.g. Fernandez v State*, 98 So.3d 730 (Fla. 2d DCA 2012); *Natural Gas Pipeline Co. of America v. Justiss*, ____ S.W.3d _____, 2012 WL 6214635 (Tex. 2012).

In this case, the affidavit of Mr. Levinson simply states that the Landsafe/Martinez appraisal "substantially overvalued" the home to be purchased by the Levinsons. The affidavit offers no competent, specific factual support, grounded in familiarity with then current market conditions or other relevant statistical market data, for this assertion; it does not state either the present value or

9

the actual value (as claimed by plaintiffs) as of March 2008, the date of the Martinez report.

The only premise for Mr. Levinson's opinion is the statement that the sales data used by Martinez as "comparable" was inadequate because two of the "comparable" outside properties were located in incomparable, "higher end' communities, while the Casa Bella "comparable" property was inaccurately depicted in the Martinez report as a significantly smaller property than it actually was, thus falsely giving the impression that properties of comparable size to the Casa Bella property were selling in the high end price range assigned by Martinez. However, the affidavit does not show that Mr. Levinson was competent to testify regarding physical details of the homes identified as "comparables" in the Martinez report, .i.e. it is not evident from his affidavit that his statements about the other "comparable" properties represent a description of "the external world" as Levinson observed it, based on first hand personal knowledge of those properties. *Cf. Feliciano v City of Miami Beach, supra.* The court is therefore not obligated to credit these speculative statements and does not find them sufficient to support an inference that the value assigned by Martinez "substantially" overvalued the property as of February 15, 2008. *See e.g. Gochman v. Oakley*, 44 Fed. Appx. 652 (5th Cir. 2002)( affidavit rejected as "conclusory and unspecific," where affiant was only sublessee of property; did not attest to market value of the property, but only as to the amount of its alleged diminution in value, with no factual support offered for assertion).

In short, Mr. Levinson's testimony does not meet the plaintiffs' burden to produce evidence of a misrepresentation regarding the property value contained in the Martinez/Landsafe report needed to withstand summary judgment on the fraud claims. The statements in the Levinson affidavit are conclusory and unspecific, and as such are inadequate to raise a genuine issue of material fact on the issue of whether the Martinez report contained a misrepresentation of fact in the first instance. In light of this fundamental deficiency in plaintiffs' proofs, defendants are entitled to summary

judgment on all fraud-based claims. *See e.g. Dauenhauer v. Bank of New York Mellon*, 2013 WL 209250 (M.D. Tenn. Jan. 16, 2013)(fraudulent inducement claim unsupported where plaintiff offered no evidence of how much their house was actually worth at the time of bank appraisal and did not allege financial interest of bank in inflating value of house); *Stephenson v. Terron-Carrera*, 36 Misc.3d 1202(A), 957 N.Y.S.2d 266(Table), 2012 WL 2400756 (N.Y. Sup. 2012)(granting summary judgment on fraud claim where plaintiff failed to show that value of property was inflated, that appraisal was fraudulent at time it was issued, or that it was intended for his benefit); *Brooks v. Dime Savings Bank of New York, FSB*, 217 Ga. App. 441, 457 S.E.2d 706 (Ga. App. 1995)(home purchaser's failure to present evidence of value of home at time of purchase precluded action for fraud).

In addition, even if plaintiffs were able to adduce competent evidence tending to show that the property was overvalued as of date of the Martinez appraisal, and that defendants knowingly relayed such false data to plaintiffs with intent to induce them to purchase the property at an inflated price, plaintiff are yet unable to establish a *prima facie* case of fraudulent inducement because they cannot prove that they acted in reliance on any false representation by defendants.

In the loan application signed by both plaintiffs and submitted to Wells Fargo, plaintiffs acknowledged:

> Neither Lender nor its agents, brokers, insurers, servants, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property.

Similarly, in the purchase and sale agreement, the Levinsons expressly disclaimed reliance on any representation outside the written terms of the agreement:

11

>   Purchaser acknowledges and represents that purchaser has read this agreement and all exhibits and addenda to it, that purchaser agrees to be bound by all of its terms and that purchaser is not relying on any statement, promise, condition or stipulation not specifically set forth in this agreement

In this same document, the Levinsons further acknowledged that they did not rely on any representations of the seller in making their decision to purchase the property:

>   Purchaser represents that Purchaser has not relied upon any statement, verbal or written, published by or under the authority of Seller in any advertising and promotional matter including, but not limited to, brochures, newspapers, radio or television, advertisements, but has based the decision to purchase on personal investigation, observation and the materials provided herewith.

[Purchase and Sale Agreement, p. 8] [Martinez Affidavit Ex. C].

These disclaimers provide that the Levinsons could not rely on either the lender and its agents (including defendant appraisers Landsafe/ Martinez ) or the seller (TOUSA and its agents) concerning the value of the Casa Bella property, and directly repudiate any prior statements that the seller (TOUSA) or lender may have made directly or indirectly through their agents (e.g. appraiser Landsafe/Martinez). These disclaimers expressly contradict the Levinsons' claims about being fraudulently induced to purchase based on representations by Preferred Home, Landsafe and/or Martinez regarding the value of the Casa Bella property, and defeat the element of reasonable reliance as a matter of law. *See e.g. G Barrett LLC v The Ginn Co.*, 2012 WL 5358883 (11th Cir. 2012)(Fla.)(purchaser of property parcel did not act in reliance on any false representation by mortgagee regarding property value so as to establish *prima facie* case of fraudulent inducement, under Florida law, where loan application contained purchaser's express disclaimer of reliance on any representation as to property value); *Curtis Investment Co., LLC v. Bayerische Hypo-Und Vereinsbank, AG*, 341 Fed. Appx. 487 (11th Cir. 2009)(Ga.)(common law fraud claims barred by merger where party signs contract containing disclaimer provision and retains benefit of contract);

*Stokes v Lusker*, 425 Fed. Appx. 18 (2d Cir. 2011)(common law fraud claim barred by express disclaimer of reliance); *In re Capco Energy, Inc.*, 669 F.3d 274 (5th Cir. 2012)(Tex)(waiver- of-reliance clause negates fraudulent inducement claim); *Schlumberger Technology Corp v. Swanson,* 959 S.W.2d 171 (Tex. 1997)(clear and express disclaimer of reliance conclusively negates as a matter of law element of reliance on representations about feasibility and value of sea diamond mining project).

### B.  Federal RICO Claim: Defendant Preferred Home Mortgage

In order for plaintiffs to recover damages against defendant Preferred Home under the federal RICO statute, 18 U.S.C. §1962(c), they must show that defendant Preferred Home and non-party TOUSA are (1) persons who have engaged in (2) predicate acts of wire or mail fraud (3) in connection with the acquisition, establishment, conduct or control of an enterprise. *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241 (5th Cir. 1988).

Because plaintiffs do not raise a genuine issue of material fact on the elements of fraudulent misrepresentation or justifiable reliance, they are unable to prove a predicate act(s) of mail or wire fraud.  Because they are unable to adduce a genuine issue of material fact on this essential element of the claim, the RICO count against Preferred Home necessarily fails,  and it is unnecessary for the court to reach Preferred Home's additional arguments that the RICO claim fails as a matter of law because plaintiff failed to adduce evidence of a "pattern" of predicate acts of wire or mail fraud conducted by defendant in connection with the conduct of a RICO "enterprise" which existed as an entity separate and apart from the pattern of activity or business in which defendant was engaged. *See e.g. Atkinson v Anadarko Bank & Trust Co.*, 808 F.2d 438 (5th Cir. 1987).

### C. Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. Defendant Preferred Home Mortgage Co.'s motion for summary judgment is **GRANTED.**

2. Defendant Landsafe and Octavio Martinez' motion for summary judgment is **GRANTED.**

3. Final summary judgment in favor of defendant shall enter by separate order of the court in accordance with Fed. R. Civ. P. 58.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 13th day of February, 2013.

_____
Daniel T. K. Hurley
United States District Judge

cc. All counsel